IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| QCP INVESTORS, LLC, QCP INVESTORS II, LLC and QUAD-C MANAGEMENT, INC., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. _____ |
| ARTHUR J. KOHLER, JR., GARY ANKERFELT, EMIL MAROTZKE and ROBERT LARKIN, | ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiffs QCP Investors, LLC, QCP Investors II, LLC and Quad-C Management, Inc., by their undersigned attorneys, respectfully allege as follows:

## THE PARTIES

1.     Plaintiff QCP Investors, LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 230 East High Street, Charlottesville, Virginia 27902.

2.     Plaintiff QCP Investors II, LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business located at 230 East High Street, Charlottesville, Virginia 27902.  Plaintiffs QCP Investors, LLC and QCP Investors II, LLC are collectively referred to herein as "the QCP Entities."

3.     Plaintiff Quad-C Management, Inc. ("Quad-C") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 230 East High Street, Charlottesville, Virginia 27902.

4.    Defendant Arthur J. Kohler, Jr. ("Kohler") is an individual and, upon information and belief, resides at 2451 Antler Point Drive, Henderson, Nevada 89014. At all relevant times, Kohler was a member of the board of directors of Transport Labor Contract/Leasing, Inc. ("TLC").

5.    Defendant Gary Ankerfelt ("Ankerfelt") is an individual and, upon information and belief, resides at 1651 Lakeview Court, Arden Hills, Minnesota 55112. At all relevant times, Ankerfelt was a member of the board of directors of TLC

6.    Defendant Emil Marotzke ("Marotzke") is an individual and, upon information and belief, resides at 775 Bullhead Parkway, Bullhead City, Arizona 86429.

7.    Defendant Robert Larkin ("Larkin") is an individual and, upon information and belief, resides at 4434 Avenue Cannes, Lutz, Florida 33558-5335.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1332(a). There is complete diversity of citizenship between the parties, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

9.    The Parties have agreed to submit to the jurisdiction of this Court with respect to all claims asserted herein. Venue is proper in this District under 28 U.S.C. § 1391, and the Parties have also consented to such venue.

## FACTUAL BACKGROUND

### The Governing Written Agreements

10.    Paribas Principal, Inc. ("PPI") and TLC entered into a Stock Subscription Agreement, dated as of February 21, 1997 (the "Subscription Agreement"), pursuant to which, inter alia, TLC issued, and PPI subscribed for, certain shares of common stock of TLC equal to approximately 50% of the outstanding shares of common stock of TLC at that time.

2

11.     Simultaneously with the execution and delivery of the Subscription Agreement, PPI, on the one hand, and Kohler, Ankerfelt, Marotzke and Larkin, on the other hand, entered into an Indemnification Agreement, dated as of February 21, 1997 (the "Indemnification Agreement"), pursuant to which Kohler, Ankerfelt, Marotzke and Larkin, as shareholders of TLC, agreed, inter alia, that they (i) "shall be liable for the payment of all Taxes[1] of [TLC] which are attributable to any Pre-Closing Period and are not reflected as a current tax liability accrual on the financial statements of [TLC] as of the Closing Date," and (ii) shall indemnify and hold harmless PPI (and related or successor entities) from damages, losses, costs or expenses arising out of various matters, including, inter alia, various tax liabilities of TLC and breaches of representations and warranties under the Subscription Agreement.

12.     Simultaneously with the execution and delivery of the Subscription Agreement, PPI, Kohler, Ankerfelt, Marotzke and Norwest Investment Services, as Escrow Agent, entered into the Escrow Agreement, dated as of February 21, 1997 (the "Escrow Agreement"), pursuant to which Kohler, Ankerfelt and Marotzke delivered an aggregate amount of $3,747,000 (the "Escrowed Amount") to be held by the Escrow Agent to satisfy any indemnity obligations owed by them under the Indemnification Agreement. Pursuant to Section 3(a) of the Escrow Agreement, the Escrow Agent shall establish separate accounts for Kohler in the amount of $2,412,253, for Ankerfelt in the amount of $1,125,234, and for Marotzke in the amount of $209,513.

13.     Simultaneously with the execution and delivery of the Subscription Agreement, PPI and Larkin entered into a Pledge Agreement, dated as of February 21, 1997 (the

---

[1]     All capitalized terms used in the Complaint have the same definition as such terms are defined in the underlying written agreement.

"Pledge Agreement"), pursuant to which Larkin pledged to PPI the shares of common stock of

TLC owned by Larkin as security for his obligations under the Indemnification Agreement (the

"Pledged Stock").

14.    On or about May 22, 2000, the QCP Entities acquired 50% of PPI's

interest in the common stock of TLC. Thereafter, PPI, Paribas North America, Inc. ("PNA") and

Quad-C entered into the Investors Agreement, dated as of July 31, 2000 (the "Investors

Agreement"). Section 1.1 (e) of the Investors Agreement provides, inter alia:

> Sellers [PPI and PNA] acknowledge and agree that Quad-C shall
> be entitled to prosecute on behalf of Sellers and the Buyers [the
> QCP Entities] any indemnity or other claim Sellers may have
> against Portfolio Companies [which includes TLC], pursuant to the
> terms of a subscription, purchase, merger, and/or other similar
> acquisition agreement and/or related agreement thereto pursuant to
> which Sellers acquired the Assets and the Quad-C Assets and any
> recovery thereunder shall be shared pro rata (based on the
> underlying securities of the relevant Portfolio Company purchased
> by Buyers pursuant to the Purchase Agreements and retained by
> Sellers as of the date hereof) between the Buyers and Sellers.

**Defendants' Liability For Pre-Closing Tax**
**Liabilities And Indemnification In Favor Of Plaintiffs**

15.    Pursuant to Section 1.15 (Taxes) of the Subscription Agreement, TLC

represented, warranted, and agreed, inter alia, that

> (a)    Tax Returns. [TLC] and its Subsidiaries have timely filed
> or caused to be timely filed with the appropriate taxing authorities
> all material returns, statements, forms and reports for Taxes [as
> defined therein] ("Returns") required to be filed by, or with respect
> to, [TLC] and its Subsidiaries. The Returns accurately reflect all
> material liability for Taxes of [TLC] and its Subsidiaries for the
> periods covered thereby . . . . (emphasis added)

16.    In addition, Article II of the Indemnification Agreement governs liability

for certain Tax matters. In particular, Section 2.2 of the Indemnification Agreement provides

that "[t]he Shareholders [Kohler, Ankerfelt, Marotzke and Larkin] shall be liable for the payment

4

of all Taxes of the Company which are attributable to any Pre-Closing Period and are not reflected as a current tax liability accrual on the financial statements of the Company as of the Closing Date which accrual in any event shall not exceed $131,000."

17.    Furthermore, Section 2.6 (Indemnification) of the Indemnification Agreement provides that Kohler, Ankerfelt, Marotzke and Larkin, as "Shareholders," shall indemnify, defend and hold harmless PPI and its successors against certain tax liabilities and damages. Specifically, Section 2.6 provides, inter alia:

> Subject to the limitations contained in Section 1.1, the Shareholders severally agree to indemnify, defend and hold harmless the Purchaser [PPI], its affiliates (including, after the Closing Date, the Company) and the successors to the foregoing (and their respective shareholders, officers, directors, employees and agents) on an after-tax basis against (i) all Taxes (and losses, claims and expenses related thereto) resulting from, arising out of, or incurred with respect to, any claims that may be asserted by any party based upon, attributable to, or resulting from the failure of any representation or warranty made pursuant to Section 1.15 of the Stock Subscription Agreement (without regard to any "materiality", "material adverse effect" or similar exception contained therein) to be true and correct as of the Closing Date, [and] (ii) all Taxes imposed on or asserted against the properties, income or operations of the Company for all Pre-Closing Periods and not reflected as a current tax liability accrual on the financial statements of the Company as of the Closing Date, which accrual in any event shall not exceed $131,000[.]"

Pursuant to Section 1.1 of the Indemnification Agreement, (i) Kohler, Ankerfelt, Marotzke and Larkin are liable under Section 2.6 to the extent that the aggregate amount of Damages[2] under both Sections exceeds $120,000, (ii) the maximum "Shareholder Indemnification Responsibility" under Sections 1.1 and 2.6 shall not exceed $2,412,253 for Kohler, $1,125,234 for Ankerfelt,

---

[2]    "Damages" is defined to include "damages, losses, costs or expenses (including, without limitation, reasonable attorney's fees and expenses)[.]"    (Indemnification Agreement, § 1.1)

$638,886 for Larkin and $209,513 for Marotzke, and (iii) a party seeking indemnity shall have recourse only against the Escrowed Amount and/or the Pledged Stock.

**The IRS Examination and Litigation**
**Concerning Pre-Closing Tax Returns of TLC**

18.    Notwithstanding the representation in Section 1.15(a) of the Subscription Agreement that all of the TLC tax returns filed prior to the closing "accurately reflect all material liability for Taxes of [TLC] and its Subsidiaries for the periods covered thereby," the U.S. Internal Revenue Service ("IRS") conducted an audit of TLC for pre-closing periods and subsequently asserted tax deficiencies against TLC in the aggregate amount of $5,252,551 (excluding interest, penalties or other charges), including:

Year ended 8/31/93    $330,320

Year ended 8/31/94    $489,345

Year ended 8/31/95    $2,167,381

Year ended 8/31/96    $2,264,505

19.    The IRS claimed that TLC should have limited the deductions taken for per diem amounts paid to reimburse meals and incidental expenses incurred by the truck drivers whom TLC leased to trucking companies, asserting that TLC was the employer for such truck drivers and, thus, subject to certain deduction limitations.

20.    As a result, TLC was forced to retain tax counsel and accountants, and to incur substantial attorneys' and accountants' fees and expenses to defend against the IRS examination and related litigation, including but not limited to an investigation of the matter, administrative appeals, application to the IRS' Industry Issue Resolution Program, pre-trial document discovery, summary judgment motion practice, a one day bench trial, and substantial post-trial briefing (the "Tax Litigation").

6

21.    The Tax Litigation was tried in the U.S. Tax Court in June 2003. On or about August 9, 2004, the Tax Court issued an opinion deciding the controversy against TLC and on August 18, 2004, entered a decision providing that TLC is liable for the entire asserted deficiency in the amount of $5,252,551, plus interest, penalties or other charges, in an amount to be determined (the "Pre-Closing Tax Liability").

22.    TLC filed a motion for reconsideration of, and a motion to vacate, the Tax Court's August 2004 Opinion. By Supplemental Memorandum Opinion, dated July 14, 2005, the Tax Court denied TLC's motion for reconsideration and motion to vacate.

23.    The Pre-Closing Tax Liability in the amount of $5,252,551, plus interest, penalties or other charges, relates to the IRS's audit of TLC's tax returns for the years ended August 31, 1993, 1994, 1995 and 1996 -- all pre-closing periods under the Indemnification Agreement. Liability for such tax deficiency was not reflected as a current tax liability accrual on the financial statements of TLC as of the Closing Date on or about February 21, 1997.

**Plaintiffs Notify Defendants**
**Of Their Indemnity Claims**

24.    Defendants were aware of the Tax Litigation and were advised that it may result in a substantial liability for Defendants. A letter dated August 17, 1998 from PPI to Kohler, Ankerfelt, Marotzke and Larkin, PPI, inter alia, provided written notice of the claim for indemnification under Section 2.6 of the Indemnification Agreement in connection with the Pre-Closing Tax Liability asserted by the IRS against TLC, including a claim for indemnification of the professional fees and expenses of attorneys and accountants incurred and to be incurred in investigating and defending against the Tax Litigation.

25.    Kohler, Ankerfelt, Marotzke and Larkin responded by letter dated September 16, 1998 from their counsel, Dorsey & Whitney LLP, which states, inter alia, that

Kohler, Ankerfelt, Marotzke and Larkin "deny responsibility for Tax Matters in excess of $1,200,000."

26.     By letter dated January 5, 2001 from John Reiss, Esq. of White & Case LLP to William Payne, Esq. of Dorsey & Whitney LLP, PPI advised Defendants of the continuing amount of attorneys' fees and other professional fees and costs incurred defending the Tax Litigation.

27.     By letter dated March 17, 2005 from John Reiss, Esq. of White & Case LLP to William Payne, Esq. of Dorsey & Whitney LLP, Defendants were advised (i) that the judgment for Pre-Closing Tax Liability totaled $5,252,551 (excluding interest, penalties or other charges ), and (ii) of the losses, claims and expenses for attorneys' and accountants' fees and costs in connection with the Tax Litigation through November 30, 2004.

28.     Pursuant to Section 4 (a) of the Escrow Agreement, the Escrowed Amount can be released either at the agreement of the parties or following a judicial determination of the claim. Specifically, Section 4 (a) of the Escrow Agreement provides:

> Paribas shall deliver a copy of any notice of a Claim provided under § 1.2 of the Indemnification Agreement to the Escrow Agent. Paribas shall give the Escrow Agent notice of withdrawal of a Claim or determination by a court of competent jurisdiction in an unappealable judgment that an indemnitee should take nothing by virtue of its Claim. In the event a court of competent jurisdiction in an unappealable judgment determines that an indemnitee shall take something by virtue of its Claim, then Paribas shall give the Escrow Agent a certified copy of the final judgment of any court of competent jurisdiction with respect to a Claim, with a copy to the Shareholders. Thirty days after providing notice of such final judgment to the Shareholders, the Escrow Agent shall pay the amount of the Claim to Paribas (or to another indemnitee if directed by Paribas) from the Escrow Deposit in an amount proportionate to the relative size of each separate account unless enjoined from doing so by a court of competent jurisdiction; provided, however, in the event that for any reason whatsoever any amounts are not paid from any

individual account, then such unpaid amounts shall be paid to Paribas or such other indemnitee from the other accounts in an amount proportionate to the relative size of such other accounts. Alternatively, the Escrow Agent shall pay to Paribas any amounts agreed to by the Shareholders and consented to by Paribas. (emphasis added)

29.    In prior communications with counsel for Defendants, Defendants have advised that, pursuant to Section 4(a) of the Escrow Agreement, any payment from the Escrowed Amounts shall only be made after a final judgment is obtained against Kohler, Ankerfelt, Marotzke and/or Larkin on the claim for indemnification.  In the March 17, 2005 letter from White & Case LLP, Defendants were again requested to (i) avoid unnecessary litigation, (ii) execute a Joint Instruction Letter instructing the Escrow Agent to release amounts from the Escrowed Amount to satisfy the indemnity obligations of Defendants Kohler, Ankerfelt and Marotzke for attorneys' and professional fees and costs incurred as of November 2004, and (iii) discuss a procedure for periodic release of the Escrowed Amount to cover losses, claims and expenses (including attorneys' and accountants' fees and costs) incurred in the ongoing defense of the Tax Litigation.

30.    To date, Kohler, Ankerfelt, Marotzke and Larkin have failed to accept Plaintiffs' invitation to resolve this dispute without this Court's intervention and have thereby required Plaintiffs to commence this action.

## FIRST CAUSE OF ACTION
### (Indemnification)

31.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 30 as if fully set forth herein.

32.    Pursuant to Section 1.15 (Taxes) of the Subscription Agreement, TLC represented, warranted, and agreed, inter alia, that TLC and its subsidiaries have timely filed with the appropriate taxing authorities all tax returns and related forms required to be filed and

that such tax returns "accurately reflect all material liability for Taxes of [TLC] and its Subsidiaries for all the periods covered thereby[.]"

33.    Pursuant to Section 1.1 and Section 2.6 of the Indemnification Agreement, Defendants Kohler, Ankerfelt, Marotzke and Larkin have agreed severally to indemnify, defend and hold harmless PPI and its successors on an after-tax basis against, inter alia, (i) "all Taxes (and losses, claims and expenses related thereto) resulting from, arising out of, or incurred with respect to, any claims that may be asserted by any party based upon, attributable to, or resulting from the failure of any representation or warranty made pursuant to Section 1.15 of the Stock Subscription Agreement (without regard to any "materiality", "material adverse effect" or similar exception contained therein) to be true and correct as of the Closing Date," and (ii) "all Taxes imposed on or asserted against the properties, income or operations of the Company for all Pre-Closing Periods and not reflected as a current tax liability accrual on the financial statements of the Company as of the Closing Date, which accrual in any event shall not exceed $131,000[.]"

34.    Pursuant to Section 1.1 and Section 2.6 of the Indemnification Agreement, Defendants are required to indemnify PPI and its successors on an after-tax basis against the Pre-Closing Tax Liability, and related losses, claims and expenses for attorneys' and accountants' fees and costs incurred and to be incurred in connection with the IRS investigation and Tax Litigation, because such amounts resulted from, arose out of, or were incurred with respect to, claims asserted by the IRS based upon, attributable to, or resulting from the breach of the representation or warranty made pursuant to Section 1.15 of the Subscription Agreement that such pre-closing tax returns of TLC "accurately reflect all material liability for Taxes of [TLC] and its Subsidiaries for the periods covered thereby."

35.     Plaintiffs have provided timely notice to Defendants of Plaintiffs' indemnity claims with respect to the Pre-Closing Tax Liability and related costs, claims and expenses for attorneys' and accountants' fees and costs in defending the Tax Litigation. Defendants have refused to acknowledge their indemnity obligations without reservation and have refused to release from the Escrowed Amount sums sufficient to cover the losses, claims and expenses for attorneys' fees and accountants' fees and other expenses incurred to date to defend against the Tax Litigation.

36.     Through June 2005, the costs, claims and expenses for attorneys' fees and accountants' fees incurred in defending the Tax Litigation totals $1,380,297.87, which total is subject to the $120,000 deduction set forth in Section 1.1 of the Indemnification Agreement.

37.     Accordingly, Pursuant to Section 1.1 and Section 2.6 of the Indemnification Agreement, Defendants are liable, severally, to indemnify PPI and its successors on an after-tax basis in an amount no less than $1,260,297.87, plus applicable interest.

## SECOND CAUSE OF ACTION
### (Declaratory Judgment/Allocation)

38.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 37 as if fully set forth herein.

39.     This is a claim for a declaratory judgment pursuant to 28 U.S.C. § 2201.

40.     There is an actual and justiciable controversy concerning the rights and legal relations of the parties requiring determination by the Court.

41.     Pursuant to Section 2.2 (Apportionment of Taxes.) of the Indemnification Agreement, Kohler, Ankerfelt, Marotzke and Larkin "shall be liable for the payment of all Taxes of the Company which are attributable to any Pre-Closing Period and are not reflected as a

current tax liability accrual on the financial statements of the Company as of the Closing Date which accrual in any event shall not exceed $131,000."

42.    The Pre-Closing Tax Liability in the amount of $5,252,551, plus interest, penalties or other charges, relates to the IRS's audit of TLC's tax returns for the years ended August 31, 1993, 1994, 1995, and 1996, which are all Pre-Closing Periods under the Indemnification Agreement.  Liability for such tax deficiency was not reflected as a current tax liability accrual on the financial statements of TLC as of the Closing Date on or about February 21, 1997.

43.    Accordingly, Plaintiffs seek a declaratory judgment determining that Kohler, Ankerfelt, Marotzke and Larkin are jointly and severally liable for the payment of the Pre-Closing Tax Liability in whatever final amount is determined after conclusion of the Tax Litigation, including all applicable interest, penalties or other charges, and directing Defendants to pay the Pre-Closing Tax Liability as and when it becomes due.

## THIRD CAUSE OF ACTION
### (Declaratory Judgment/Indemnification)

44.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 43 as if fully set forth herein.

45.    This is a claim for a declaratory judgment pursuant to 28 U.S.C. § 2201.

46.    There is an actual and justiciable controversy concerning the rights and legal relations of the parties requiring determination by the Court.

47.    Pursuant to Section 1.15 (Taxes) of the Subscription Agreement, TLC represented, warranted, and agreed, inter alia, that TLC and its subsidiaries have timely filed with the appropriate taxing authorities all tax returns and related forms required to be filed and

12

that such tax returns "accurately reflect all material liability for Taxes of [TLC] and its Subsidiaries for all the periods covered thereby[.]"

48.    Pursuant to Section 1.1 and Section 2.6 of the Indemnification Agreement, Defendants Kohler, Ankerfelt, Marotzke and Larkin have agreed severally to indemnify, defend and hold harmless PPI and it successors on an after-tax basis against, inter alia, (i) "all Taxes (and losses, claims and expenses related thereto) resulting from, arising out of, or incurred with respect to, any claims that may be asserted by any party based upon, attributable to, or resulting from the failure of any representation or warranty made pursuant to Section 1.15 of the Stock Subscription Agreement (without regard to any "materiality", "material adverse effect" or similar exception contained therein) to be true and correct as of the Closing Date," and (ii) "all Taxes imposed on or asserted against the properties, income or operations of the Company for all Pre-Closing Periods and not reflected as a current tax liability accrual on the financial statements of the Company as of the Closing Date, which accrual in any event shall not exceed $131,000[.]"

49.    Pursuant to Section 1.1 and Section 2.6 of the Indemnification Agreement, Defendants are required to indemnify PPI and its successors for the Pre-Closing Tax Liability, and related losses, claims and expenses for attorneys' and accountants' fees and costs incurred and to be incurred in connection with the Tax Litigation, because such amounts resulted from, arose out of, or were incurred with respect to, claims asserted by the IRS based upon, attributable to, or resulting from the breach of the representation or warranty made pursuant to Section 1.15 of the Subscription Agreement that such pre-closing tax returns of TLC "accurately reflect all material liability for Taxes of [TLC] and its Subsidiaries for the periods covered thereby." In addition, pursuant to Section 1.1 and Section 2.6 of the Indemnification Agreement, Defendants are required to indemnify Plaintiffs for the Pre-Closing Tax Liability as "Taxes imposed on or

asserted against the properties, income or operations of the Company for . . . Pre-Closing Periods and not reflected as a current tax liability accrual on the financial statements of the Company as of the Closing Date[.]"

50.    Plaintiffs have provided timely notice to Defendants of Plaintiffs' indemnity claims with respect to the Pre-Closing Tax Liability and related costs, claims and expenses for attorneys' and accountants' fees and costs in defending against such matter. To date, Defendants have refused to acknowledge their indemnity obligations without reservation.

51.    Accordingly, Plaintiffs seek a declaratory judgment determining the following:

a.    that, pursuant to Section 1.1 and Section 2.6 of the Indemnification Agreement, Defendants Kohler, Ankerfelt, Marotzke and Larkin shall severally indemnify on an after-tax basis PPI and its successors for the Pre-Closing Tax Liability in whatever final amount is determined after conclusion of the Tax Litigation, including all applicable interest, penalties or other charges, subject to the limitations on each of their indemnity obligations as set forth in Indemnification Agreement; and

b.    that, pursuant to Section 1.1 and Section 2.6 of the Indemnification Agreement, Defendants shall severally indemnify PPI and its successors for the losses, claims and expenses for attorneys' fees and accountants' fees and other expenses to be incurred after June 2005 to defend against the Tax Litigation, subject to the limitation on each of their indemnity obligations as set forth in Indemnification Agreement.

## FOURTH CAUSE OF ACTION
### (Attorneys' Fees and Costs)

52.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 51 as if fully set forth herein.

14

53.    In addition to and separate from Defendants' indemnification obligations under Section 1.1 and Section 2.6 of the Indemnification Agreement, Section 5.10(e) of the Indemnification Agreement provides that "the prevailing party or parties, as the case may be, in any action, suit, arbitration or other proceeding arising out of or with respect to this Agreement or the transactions contemplated thereby shall be entitled to reimbursement of all costs of litigation, including reasonable attorneys' fees, from the non-prevailing party." Section 5.10(e) further provides that the determination by the Court of each of the "prevailing party" and the "non-prevailing party" shall be made part of the judgment rendered by the Court in this action. Identical "fee-shifting" agreements are provided at Section 9.13(e) of the Subscription Agreement and Section 17(e) of the Pledge Agreement. Amounts payable under these "fee-shifting" provisions are in addition to Defendants' indemnification obligations and such amounts are not included in determining the maximum "Shareholder Indemnification Responsibility" under Sections 1.1 and 2.6 of the Indemnification Agreement.

54.    Plaintiffs have and will incur attorneys' fees, costs and expenses in connection with the prosecution of this action. If Plaintiffs prevail in this action, Kohler, Ankerfelt, Marotzke and Larkin are obligated to reimburse Plaintiffs for all costs of this litigation, including reasonable attorneys' fees, in an amount to be determined, under the terms of the Indemnification Agreement, Subscription Agreement and Pledge Agreement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs QCP Investors, LLC, QCP Investors II, LLC and Quad-C Management, Inc. request the Court to enter judgment against Defendants Kohler, Ankerfelt, Marotzke and Larkin as follows:

15

A.    On the First Cause of Action, awarding Plaintiffs an amount not less than $1,260,297.87 plus interest from Defendants severally as indemnification on an after-tax basis against for the losses, claims and expenses for attorneys' and accountants' fees and costs incurred through June 2005 in defending against the Tax Litigation;

B.    On the Second Cause of Action, entering a judgment declaring that Kohler, Ankerfelt, Marotzke and Larkin are liable for the payment of the Pre-Closing Tax Liability in whatever final amount is determined after conclusion of the Tax Litigation, including all applicable interest, penalties or other charges, and directing Defendants to pay the Pre-Closing Tax Liability as and when it becomes due.;

C.    On the Third Cause of Action, entering a judgment declaring that:

(i)    pursuant to Section 1.1 and Section 2.6 of the Indemnification Agreement, Defendants Kohler, Ankerfelt, Marotzke and Larkin shall severally indemnify on an after-tax basis PPI and its successors for the Pre-Closing Tax Liability in whatever final amount is determined after conclusion of the Tax Litigation, including all applicable interest, penalties or other charges, subject to the limitation on each of their indemnity obligations as set forth in Indemnification Agreement; and

(iii)    pursuant to Section 1.1 and Section 2.6 of the Indemnification Agreement, Defendants shall severally indemnify on an after-tax basis PPI and its successors for the losses, claims and expenses for attorneys' fees and accountants' fees and other expenses to be incurred after June 2005 to defend against the IRS investigation and Tax Litigation, subject to the limitation on each of their indemnity obligations as set forth in Indemnification Agreement;

D.    On the Fourth Cause of Action, (i) declaring that, pursuant to Section 5.10(e) of the Indemnification Agreement, Section 17(e) of the Pledge Agreement and Section

16

9.13(e) of the Subscription Agreement (1) Plaintiffs are "prevailing parties," and (2) Kohler, Ankerfelt, Marotzke and Larkin are "non-prevailing parties," and (ii) awarding Plaintiffs its costs and expenses incurred in prosecuting this action, including their reasonable attorneys' fees and costs, in an amount to be determined; and

        E.     Awarding Plaintiffs such other and further relief as the Court deems just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL

_____

R. Judson Scaggs, Jr. (#2676)
William M. Lafferty (#2755)
Jerry C. Harris, Jr. (#4262)
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware  19899
  Attorneys for Plaintiffs

OF COUNSEL:

Glenn M. Kurtz
Robert E. Tiedemann
WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York  10036
(212) 819-8200

July 27, 2005